UNITIED STATES DISCTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X
MYUNG-JA MELTON,

                              Plaintiff,

   -against-                                                        18-CV-8111(SDA)

MALCOLM SHABAZZ, L.P.; COVINGTON
REALTY SERVICES, INC.; STARR
INDEMNITY & LIABILITY CO.; NORYCH
GROUP, INC.,

                              Defendants.
--------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MALCOLM SHABAZZ, L.P AND COVINGTON REALTY
<u>SERVICES INC.'S MOTION FOR SUMMARY JUDGMENT</u>**

**PRELIMINARY STATEMENT**

In this pro se action, which the Court has construed as alleging violations of the Fair Housing Act, Plaintiff Myung-Ja Melton ("Plaintiff") alleges that Defendants discriminated against her in failing to make certain repairs to her apartment. As will be discussed in detail below Plaintiff's own testimony establishes that she was not discriminated against on any protected ground. Furthermore, numerous rulings in Plaintiff's prior litigation against Defendants establish that Defendants have made all of the repairs which they are legally obligated to make. Furthermore, Plaintiff's claims are barred by the two-year statute of limitations applicable to claims under the Fair Housing Act. Accordingly, Defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56.

**STATEMENT OF FACT**

At all times relevant herein, Plaintiff resides in Apartment 2C at 104 Lenox Avenue, New York, New York. (Ex. "A" Pl. Dep 4:11-13). She has resided in this apartment since approximately 2005. (Id. At 6:9-12). This building is owned by Defendant Malcolm Shabazz, L.P. and managed by Defendant Covington Realty Services, Inc. (Id. at 12:21-13:8). Plaintiff works as an artist who primarily focuses on painting. (Id at 8:5-13). She is a naturalized United States citizen who was born in South Korea. (Id. at 8:25-9:25). Plaintiff's apartment shares a wall with an apartment occupied by Sharif Abduz Aziz, the building's longtime Superintendent. (Id. at 22:19-23:10).

Beginning in early 2015, Plaintiff has experienced plumbing issues in her apartment. She testified that a malfunction in her faucet caused it to turn on and off by itself, causing flooding in the store located beneath her apartment. (Ex. "A" Pl. Dep. at 31:9-20). Mr. Aziz believed that the

1

problem may have been caused by a tenant above Plaintiff installing a washing machine in violation of the terms of their lease. (Ex. "B" Aziz Dep. 11:3-20:25). He inspected the apartments above Plaintiff but did not find any washing machines. (Id.). Mr. Aziz told Plaintiff that she was responsible for the flooding because she was the only one living in her apartment who could have let the water run. (Ex. "A" at 31:14-32:7). Defendants retained the services of a plumber who inspected the water system and ran a line through the pipes but could not identify a blockage. (Ex. "C" Plumbing Invoice; Ex. "D" Beatty Affidavit).

Plaintiff filed an HP action in New York City housing court against Malcolm Shabazz, LP seeking the correction of various alleged code violations in her apartment. (Ex. "A" at 30:4-7). The division of Housing Preservation and Development inspected Plaintiff's apartment on August 9, 2016. (Ex. "E" 8/9/16 Inspection Report). Of the seven issues Plaintiff identified, three were found to be code violations. (Ex. "E" 8/9/16 Inspection Report; Ex. "F" List of Open Violations in Plaintiff's Apartment). Defendants replaced the cabinets, fixed the floor, and fixed the malfunctioning faucet. (Ex. "A" at 30:16-31:13; 32:24-33:11). They made the repairs they agreed to make. (Id. at 45:6-13). Defendants' work orders and invoices from third party contractors reflect that Defendants have responded to numerous complaints from Plaintiff regarding her apartment and engaged contractors to make repairs in her apartment on numerous occasions. (Ex. "G" Work orders and Invoices for 104 Lennox Ave Apt. 2C).

At times, Defendants attempt to repair Plaintiff's apartment have been delayed by Plaintiff limiting the time when contractors could enter her apartment. (Ex. "H" Beatty Dep. 73:8-23). In a letter June 27, 2017, letter Plaintiff advised Defendants that they could perform repairs only during business hours on July 4, a federal holiday. (Ex. "I," Pl June 26, 2017 letter). In a similar vein, when Defendants retained an Environmental Services contractor to remediate a mold

condition in Plaintiff's apartment, Plaintiff directed the worker to leave her apartment before she could finish her report.  Plaintiff then informed Defendants that the contracts were not permitted to not access her apartment on either of the two dates she had previous proposed.  She then advised the contractors that the method that they were going to kill the mold was ineffective and that they had not "justified a full day of occupancy" of her apartment and that they were engaged in "dishonorable business practices."  (Ex. "J," E-mails re: mold remediation).

The occupant of the store below Plaintiff's apartment alleged to have sustained damage to his property as a result of water coming from Plaintiff's apartment.  The store's insurance carrier, Starr Indemnity & Liability Co., filed a subrogation action against Plaintiff seeking damages of $5,226.00.  (Ex. "K" Summons and Complaint in Subrogation Action).  Plaintiff counterclaimed, seeking four million dollars for intentional inflict of emotional distress and abuse of process.  (Ex. "L" Answer with Counterclaims).  The court dismissed Plaintiff's counterclaims and Starr Indemnity voluntarily dismissed its claims against Plaintiff.  (Ex. "M" Decision dismissing counterclaims; Ex. "N" Stipulation of Dismissal).  Neither Malcolm Shabazz, L.P., nor Covington Reality Services, Inc. were parties to that litigation.  In 2018, Malcolm Shabazz, L.P. commenced a Housing Court proceeding against Plaintiff for non-payment of rent.  In July of 2019, this action was discontinued by stipulation when Plaintiff tendered $4,790 in court.  (Ex. "O" Stipulation of Discontinuance in Nonpayment Proceeding).

Plaintiff testified that she suffered mental agony, stress, and anxiety, because of the condition of her apartment.  However, she did not testify to any facts suggesting that she was discriminated against on the basis of race or national origin.  (Ex. "A" at 47:10-18; 49:12-21: 49:22-50:5).  Plaintiff concluded that Defendants replaced the cabinets of other tenants because she saw them in the garbage collection are of her building or on the sidewalk waiting for collection.

(Id. at 50:6-51:7). She has never seen the interiors of other apartments in her building and does not know the circumstances surrounding their replacement or whether these cabinets were replaced in response to HPD violations. (Id. at 50:6-51:15).

## RELEVANT PROCEDURAL HISTORY

Plaintiff commenced this pro se action on or about September 5, 2018, (Dkt. No. 2). By decision and order dated September 26, 2018, Judge Stanton informed Plaintiff of the requirements of a claim under the Fair Housing Act and ordered Plaintiff to file an amended complaint pursuant to his authority under 28 U.S.C. § 1915(b)(2)(E). (Dkt. No. 7). Plaintiff filed an Amended Complaint on May 25, 2019. (Dkt. No. 12). Discovery is now complete and the Court set a briefing schedule for Defendants' summary judgment motion.

## ARGUMENT

### I. Defendants did not violate the Fair Housing Act

The Fair Housing Act makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of . . . national origin." 42 U.S.C. § 3604(b). To establish a disparate treatment claim under the FHA, a plaintiff can either produce direct evidence of discriminatory intent or indirect evidence that creates an inference of discriminatory intent under the McDonnell-Douglas burden-shifting framework. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008).

In the case at bar, Defendants are entitled to summary judgment because Plaintiff has produced no evidence that she was discriminated against on the basis of any protected ground. During her deposition, Plaintiff was asked repeatedly whether she felt she was discriminated

against on the basis of race.  (Ex. "A" at 47:10-18; 49:12-21: 49:22-50:5).  In response, she chided defendants for continually asking about racial discrimination and suggested that she was discriminated against on other, unspecified grounds.  (Ex. "A" at 49:12-21).   As there is no evidence that Plaintiff was discriminated against on a statutorily protected ground, Defendants are entitled to summary judgment.  See Simon v. City of New York, No. 12-cv-1596, 2012 U.S. Dist. LEXIS 151515 at *18-19 (Oct. 18, 2012) (holding that complaint failed to state a Fair Housing Act claim where it alleged that defendants overcharged plaintiff for rent but no facts suggested that they intentionally discriminated against him on a protected ground); Riccardo v. Cassidy, 1:10-cv-462, 2011 U.S. Dist. LEXIS 26856 at *9 (N.D.N.Y. March 16, 2011)(dismissing complaint that "contains no specific facts from which a plausible claim of intentional discrimination [disparate treatment] by defendant based on plaintiff's disability can be gleaned"); Bresier v. Golden Nat'l Mortg. Banking Corp., No. 00-6001 2000 U.S. App. LEXIS 21267 (2d. Cir. Aug 21, 2000)(affirming dismissal of complaint alleging that roof leaked and repairs were never made on the ground that it "made not even the barest suggestion of discrimination on a basis protected by [the Fair Housing Act]"); see also Rosquist v. St. Marks Realty Assoc., LLC, No. 08-cv-2764, 2008 U.S. Dist. LEXIS 59483, 2008 WL 2965435, at *2 (E.D.N.Y. Aug. 1, 2008)( "Federal courts do not have subject-matter jurisdiction over landlord-tenant matters.").

      **II.**    **Plaintiff's claims are barred by the statute of limitations**

Additionally, Defendants are entitled to summary judgment because Plaintiff's claims are time-barred.  Claims brought pursuant to the Fair Housing Act are subject to a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A) ( "An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice.").  In FHA cases concerning physical attributes of housing that are readily observable to

a Plaintiff, the statute of limitations begins to run when the Plaintiff becomes aware of those attributes. See Wood v. Briarwood Condo Ass'n. Board of Directors, 369 Fed Appx. 1, 5 (11th Cir. 2010)(holding that statute of limitations had run because plaintiff had been aware of the physical conditions that he complained of for more than two years prior to filing suit).

In the case at bar, Plaintiff's initial complaint in this action was filed on September 5, 2018. (Dkt. No. 2).  Plaintiff was plainly aware of the allegedly defective condition of her sink and cabinets more than two years before this date.  Records from the New York Department of Housing Preservation and Development indicate that these conditions were inspected on August 23, 2016 at Plaintiff's behest.  (Ex. "E," 8/23/16, HPD Inspection form).  Thus, she was aware of them for more than two years before she filed suit and her claims are time-barred.

## CONCLUSION

Wherefore, in light of the foregoing, it is respectfully submitted that Defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56.

Dated: New York, New York
July 13, 2020

Respectfully submitted,

MORRIS DUFFY ALONSO & FALEY

By: *James A. Pannone*
_____
James A. Pannone
*Attorneys for Defendants Malcolm Shabazz, L.P. and Covington Realty Services, Inc.*
101 Greenwich Street, 22nd Floor
New York, New York 10006
Tel: (212) 766-1888
Fax: (212) 766-3252
jpannone@mdafny.com

CC: VIA E-MAIL AND ECF
MYUNG-JA MELTON
*Pro Se Plaintiff*
myungja99@aol.com