USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/12/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Myung-Ja Melton,

                              Plaintiff,

            -against-

Malcolm Shabazz, L.P. et al.,

                              Defendants.

1:18-cv-08111 (SDA)

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Plaintiff Myung-Ja Melton ("Plaintiff" or "Melton") brings this action against Malcolm Shabazz, L.P. ("Malcolm Shabazz") and Covington Realty Services, Inc. ("Covington") (together, "Defendants") alleging violations of the Fair Housing Act, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq*. ("FHA"). (Am. Compl., ECF No. 12.) Before the Court is Defendants' motion for summary judgment. (Defs.' Not. of Mot., ECF No. 74.) For the reasons set forth below, Defendants' motion is GRANTED.

**FACTUAL BACKGROUND**

Plaintiff, a naturalized United States citizen who was born in South Korea, has resided in Apartment 2C at 104 Lenox Avenue, New York, New York since approximately 2005. (Defs.' 56.1, ECF No. 78, ¶¶ 1, 2, 4.)[1] Plaintiff's apartment building is owned by Malcolm Shabazz and managed by Covington. (*Id*. ¶ 3.) Sharif Abdul Aziz, whose apartment is next to Plaintiff's apartment, is the building's longtime Superintendent. (*Id*. ¶ 5.)

---

[1] Plaintiff concedes paragraphs 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 19, 20, 21 and 25 contained in Defendants' 56.1 Statement. (*See* Pl.'s Resp. to Defs.' 56.1, ECF No. 86, at 2.)

In early 2015, Plaintiff began experiencing plumbing issues in her apartment, including a problem with her kitchen faucet that caused it to turn on and off by itself. (Defs.' 56.1 ¶ 6.) On or about May 9, 2015, a malfunction with the faucet caused water damage to the store below Plaintiff's apartment.[2] (Defs.' 56.1 ¶¶ 6, 19.) However, Superintendent Aziz told Plaintiff that she was responsible for the flooding because she was the only one living in her apartment who could have let the water run. (Defs.' 56.1 ¶ 9; Pl.'s Resp. to Defs.' 56.1 ¶ 9.) Plaintiff contends that Aziz was "gaslighting" her by making her believe that she had caused the flooding. (Pl.'s Deposition Tr., Pannone Decl. Ex. A, ECF No. 77-1 ("Pl.'s Tr."), at 31:14-32:07; *see also* Am. Compl. at 8.[3])

Beginning in January 2016, Plaintiff experienced problems with suds and sewage backing up in her kitchen sink and overflowing, which caused damage to her cabinets and floor as well as the cookware in the cabinet beneath the kitchen sink. (Pl.'s Tr. at 32:15-23; *see also* Am. Compl. at 7-8.) Superintendent Aziz indicated that he thought the problem was caused by an unauthorized washing machine in another apartment.[4] (Defs' 56.1 ¶ 7; Pl.'s Resp. to Defs.' 56.1 ¶ 7; *see also* Am. Compl. at 7.)

---

[2] In October 2017, the store's insurance carrier, Starr Indemnity & Liability Co. ("Starr"), filed a subrogation action against Plaintiff seeking damages of $5,226.00. (Defs.' 56.1 ¶ 19; *see also* Summons and Complaint, Pannone Decl. Ex. K, ECF No. 77-11.) Plaintiff counterclaimed, seeking four million dollars for intentional inflict of emotional distress and abuse of process. (Defs.' 56.1 ¶ 20; *see also* Answer with Counterclaims, Pannone Decl. Ex. L, ECF No. 77-12). The court dismissed Plaintiff's counterclaims and Starr voluntarily dismissed its claims against Plaintiff. (Defs.' 56.1 ¶ 21; Decision, Pannone Ex. M, ECF No. 77-13; Stipulation of Dismissal, Pannone Decl. Ex. N, ECF No. 77-14.)

[3] The Court cites to the ECF pagination of the Amended Complaint and Plaintiff's other filings.

[4] According to Defendants, Aziz inspected the four apartments above Plaintiff's apartment and did not find any unauthorized washing machines. (Defs.' 56.1 ¶¶ 8.) Plaintiff disputes that Aziz thoroughly inspected the apartments and argues that Aziz "set up four Afro American male tenants" against her. (Pl.'s Resp. to Defs.' 56.1 ¶ 8.)

In or about July 2016, Plaintiff filed an HP action[5] in New York City housing court against Malcolm Shabazz seeking the correction of alleged code violations in her apartment, including raw waste backup in her sink, damage to her floor and cabinets, mold/mildew/bacteria, offensive odor and a defective faucet and heater valve. (Defs.' 56.1 ¶ 11; Tenant's Request For Inspection Request, Pannone Decl. Ex. E, ECF No. 77-5.) The division of Housing Preservation and Development ("HPD") inspected Plaintiff's apartment on August 9, 2016. (Defs.' 56.1 ¶ 12.) HPD found three code violations in Plaintiff's apartment relating to a kitchen cabinet drawer, the kitchen floor and the water shut off valve in the kitchen sink. (*Id.* ¶ 13; *see also* Open Violation Summary Report, Pannone Decl. Ex. F, ECF No. 77-6.)

Defendants retained the services of a plumber who, on October 26, 2016, inspected the water system and ran a line through the pipes but could not identify the source of the blockage. (Defs.' 56.1 ¶ 10.) Defendants eventually repaired the floor, cabinets and faucet, although the cabinets were not repaired until December 29, 2018. (Defs.' 56.1 ¶ 14-15; Pl.'s Resp. to Defs.' 56.1 ¶¶ 14-15.) The parties dispute whether these delays were caused, at least in part, by Plaintiff limiting access to her apartment. (Defs.' 56.1 ¶¶ 16-18; Pl.'s Resp. to Defs.' 56.1 ¶¶ 16-18.)

## PROCEDURAL HISTORY

Plaintiff, proceeding *pro se*, commenced this action on September 5, 2018. (Compl., ECF No. 2). District Judge Stanton, then presiding over this case, entered an Order to Amend on September 26, 2018, informing Plaintiff of the requirements of a claim under the FHA and, pursuant to his authority under 28 U.S.C. § 1915(b)(2)(E), ordering Plaintiff to file an amended

---

[5] An HP action is a proceeding brought by a tenant against a landlord to force the landlord to make repairs and correct building violations. *See* http://www.courts.state.ny.us/courts/nyc/housing/startinghp.shtml (last visited Feb. 12, 2021).

complaint. (Order to Amend, ECF No. 7). Plaintiff filed the Amended Complaint on May 25, 2019. (Am. Compl., ECF No. 12). The Amended Complaint names as Defendants Malcolm Shabazz, Covington, Starr and The Norych Group, Inc. ("Norych"), an alleged agent of Starr. (*See id*.) On April 12, 2019, District Judge Torres, to whom the case had been reassigned, entered an Order of Service, directing service on Defendants Malcolm Shabazz and Covington, but dismissing without prejudice Plaintiff's claims against Starr and Norych, all of which Judge Torres found arose under state law. (Order of Service, ECF No. 15.) Malcolm Shabazz filed its Answer on August 15, 2019 and Covington filed its Answer on August 26, 2019. (Malcolm Shabazz Answer, ECF No. 24; Covington Answer, ECF No. 32.) On September 23, 2019, the parties consented to my jurisdiction for all purposes. (Consent, ECF No. 35.)

Following discovery, Defendants filed the instant motion for summary judgment on July 13, 2020. (Notice of Motion, ECF No. 74.) On August 12, 2020, Plaintiff attempted to file her opposition papers by placing them in the Court's drop box. However, the papers appear to have been misplaced and were not filed on the docket. Defendants provided the Court with copies of Plaintiff's opposition papers other than the exhibits to her Declaration, which they had not received, and sought additional time to file a reply. (9/17/20 Letter Motion, ECF No. 80.) On September 30, 2020, the Court held an in-person status conference to address the status of Plaintiff's opposition and Defendants' reply. (9/30/20 Tr., ECF No. 87.)

During the conference, Plaintiff provided copies of the exhibits to her opposition to Defendants' motion and thereafter the Court filed all of Plaintiff's opposition papers on the

4

docket.[6] Plaintiff informed the Court that she had not been provided with a copy of the notice to pro se litigants opposing summary judgment and the Court provided a copy to her. (9/30/20 Tr. at 6-7, 9-10.) Plaintiff also renewed a prior request for additional third-party discovery. (*Id*. at 7-9.) The Court denied Plaintiff's request without prejudice, explaining to Plaintiff that if she believed that she needed additional discovery to oppose Defendant's motion she could state as such in her opposition in accordance with Federal Rule of Civil Procedure 56(d). (*Id*. at 9-11; 9/30/2020 Order, ECF No. 83.) The Court also gave Plaintiff three weeks (later extended to four weeks) to file any additional opposition papers. (9/30/2020 Order; 10/21/2020 Memo Endorsement, ECF No. 90.) On October 28, 2020, Plaintiff filed a Rule 56(d) Response to Defendants' motion for summary judgment. (Pl.'s 56(d) Resp. ECF No. 92.) Defendants filed a reply memorandum on November 23, 2020. (Reply Mem., ECF No. 93.)

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23, (1986). If the moving party meets its initial burden, the burden then shifts to the non-moving party to establish a genuine dispute of material fact. *Id*. at 322. "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City*

---

[6] The Court notes that, while the document titled Plaintiff's Opposition To Motion For Summary Judgment (ECF No. 85) refers to a memorandum of law, Plaintiff clarified during the conference that she did not file a memorandum of law. (9/30/20 Tr. at 5; *see also* Pl.'s 10/28/2020 Letter, ECF No. 91.)

*of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. (quoting *Anderson*, 477 U.S. at 248).

The Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson,* 477 U.S. at 255. Moreover, "[w]here, as here, the party opposing summary judgment is proceeding *pro se*, the court should read his papers 'liberally,' and 'interpret them to raise the strongest arguments that they suggest.'" *Leckie v. Robinson*, No. 17-CV-08727 (PGG) (BCM), 2020 WL 5238602, at *7 (S.D.N.Y. Feb. 6, 2020) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), *report and recommendation adopted* 2020 WL 2114846 (S.D.N.Y. May 4, 2020). "Nonetheless, proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Parker v. Fantasia*, 425 F.Supp.3d 171, 183 (S.D.N.Y. 2019) (internal citations omitted).

II.     **Rule 56(d)**

Under Rule 56(d), if a party responding to a summary judgment motions "shows by affidavit or declaration that, for specified reasons, [she] cannot present facts essential to justify [her] opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). "Any such affidavit or declaration must describe: (1) what facts are sought and how they are to be obtained, (2) how such facts are reasonably expected to raise a genuine issue of material fact, (3) what efforts the affiant has made to obtain them, and (4) why the

6

affiant's efforts were unsuccessful." *Parker*, 425 F.Supp.3d at 184 (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)); *see also Leckie*, 2020 WL 5238602, at *7.

### III. <u>The FHA</u>

The FHA "broadly prohibits discrimination in housing[.]" *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Under section 3604(b) of the FHA, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). "The Second Circuit has held that Section 3604(b) prohibits not just discrimination in connection with the initial rental or sale of a dwelling, but also conduct that 'would constitute discrimination in the enjoyment of residence in a dwelling or in the provision of services associated with that dwelling after acquisition.'" *Ash v. Jacobson*, No. 16-CV-09548 (GHW), 2020 WL 2848178, at *4 (S.D.N.Y. June 1, 2020) (quoting *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 377 (2d Cir. 2019)). Prohibited actions under the FHA include failing to provide or delaying maintenance or repairs because of, *inter alia*, race or national origin. *See Miller v. 270 Empire Realty LLC*, No. 09-CV-02857 (RJD) (RER), 2012 WL 1933798, at *4 (E.D.N.Y. Apr. 6, 2012) (citing 24 C.F.R. § 100.65(b)(2)), *report and recommendation adopted*, 2012 WL 1940829 (E.D.N.Y. May 29, 2012).

"Claims under the FHA may be brought under either a disparate impact or a disparate treatment theory of liability." *De La Fuente v. Sherry Netherland, Inc.*, No. 17 CIV. 4759 (PAE), 2019 WL 3430207, at *11 (S.D.N.Y. July 30, 2019) (citing *Fair Hous. in Huntingon Comm. v. Town of Huntington*, 316 F.3d 357, 366 (2d Cir. 2003)). The Court analyzes FHA disparate treatment claims under the familiar *McDonnell Douglas* burden-shifting framework. *See id*. (citations

omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). "Accordingly, once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to assert a legitimate, nondiscriminatory rationale for the challenged decision." *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir.2003) (summarizing *McDonnell-Douglas* burden-shifting framework). "If the defendant makes such a showing, the burden shifts back to the plaintiff to demonstrate that discrimination was the real reason for the defendant's action." *Id*. "Summary judgment in defendants' favor 'is appropriate if no reasonable jury could find that the defendant's actions were motivated by discrimination.'" *De La* Fuente, 2019 WL 3430207, at *11 (quoting *McDonnell Douglas*, 411 U.S. at 803).

## DISCUSSION

### I.   Statute Of Limitations

Defendants argue that Plaintiff's FHA claims are barred by the statute of limitations. (Defs.' Mem. at 5-6.) A claim under the FHA must be brought within two years "after the occurrence or the termination of an alleged discriminatory housing practice. . . whichever occurs last[.]" 42 U.S.C. § 3613(a)(1)(A). "Under federal law, a cause of action generally accrues 'when the plaintiff knows or has reason to know of the injury that is the basis of the action.'" *Stone v. 23rd Chelsea Assocs.*, No. 18-CV-03869 (VSB), 2020 WL 1503671, at *6 (S.D.N.Y. Mar. 30, 2020) (quoting *Nat'l R.R. Passenger Corp. v. McDonald*, 779 F.3d 97, 101 (2d Cir. 2015)). "In analyzing the timing of [when a claim accrues] in the context of discrimination claims, the Supreme Court has instructed that 'the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful.'" *Id*. (quoting *Bd. of Educ. v. C.M. on behalf of P.G.*, 744 F. App'x 7, 9 (2d Cir. 2018)).

"The statute of limitations for certain discrimination claims, including the FHA, can be effectively extended under the 'continuing violation' theory, whereby the plaintiff claims not just an isolated violation, but an ongoing policy of discrimination which extend into the limitations period." *273 Lee Ave. Tenants Ass'n by Sanchez v. Steinmetz*, 330 F. Supp. 3d 778, 791-92 (E.D.N.Y. 2018)(citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004)).

"In the housing context, courts have applied the continuing violation theory 'where the type of violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period.'" *Id*. (quoting *Pantoja v. Scott*, 96-CV-08593, 2001 WL 1313358, at *11 (S.D.N.Y. 2001)). "Conversely, courts have held the continuing violation theory does not apply where a plaintiff was on notice of what she believed was discrimination but failed to act in preservation of her rights in spite of her knowledge." *Id*. (internal citation, quotation marks and alterations omitted).

Defendants argue that Plaintiff was "aware of the allegedly defective condition of her sink and cabinets more than two years before" she filed the initial complaint on September 5, 2018, as evidenced by the August 23, 2016 HPD inspection report. (Defs.' Mem. at 5.) However, the relevant inquiry is the time of the alleged discrimination. Plaintiff alleges that Defendants discriminated against her by delaying repairs, including repairs of her cabinets that were not completed until December 29, 2018. Moreover, in opposing Defendants' motion, Plaintiff asserts that she was not aware of the alleged discrimination until November 22, 2016, when she saw other cabinets on the sidewalk and suspected that cabinets of other tenants were being replaced.

(Pl.'s 56.1(d) Resp. at 2.) Accordingly, construing the facts in the light most favorable to Plaintiff, the Court will not dismiss Plaintiff's claims on statute of limitations grounds.

## II. Plaintiff's FHA Claims

Liberally construing the Amended Complaint, Plaintiff alleges that repairs to her apartment were delayed due to her race and/or national origin. (Am. Compl. at 7-8.) Plaintiff also alleges that Defendants blamed her for the damage to her apartment while protecting the African American and/or Muslim tenants in the apartments above hers, who Plaintiff believes had unauthorized washing machines. (*Id*. at 7; *see also* Pl.'s Resp. to Defs.' 56.1 ¶¶ 7-8.) Finally, Plaintiff alleges that every time the store below her apartment suffered water damage, men came up shouting and kicking her door, and that Aziz and men from the store below her apartment "terrorized her" and Aziz "gaslighted" her by blaming her for the water damage to the store. (Am. Compl. at 8.) I first consider Plaintiff's claim based on delayed repairs and then consider Plaintiff's remaining allegations.[7]

### A. Delayed Repairs

Plaintiff alleges that she was the "sole Asian senior citizen housed by Malcolm Shabazz" and that Defendants remained unresponsive to her repeated requests for repairs. (Am. Compl. at 7.) Plaintiff further alleges that Defendants replaced the cabinets of other tenants who requested repairs. (*Id*.)

---

[7] In her opposition papers, Plaintiff also suggests other allegedly discriminatory acts, such as that she was denied a lease renewal; that Malcom Shabazz brought eviction proceedings against her in retaliation for filing this lawsuit; and that Aziz, as an employee of Defendants colluded with Starr. (*See* Pl.'s Resp. to Defs.' 56.1 ¶¶ 22-23.) None of these allegations are included in the Amended Complaint. In any event, as with Plaintiff's other claims, she has failed to adduce any evidence of discriminatory intent.

"Under § 3604(b), a plaintiff can establish a prima facie case of disparate treatment by making a modest showing that a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination." *Khodeir v. Sayyed*, No. 15-CV-08763 (DAB), 2016 WL 5817003, at *5 (S.D.N.Y. Sept. 28, 2016); *see also Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 586 (S.D.N.Y. 2012) ("[C]ourts in this Circuit have articulated the elements of a *prima facie* showing in differing ways depending on the conduct at issue . . . [b]ut regardless of how the *prima facie* standard is articulated, the plaintiff is required to show that defendants' action against [her] arose from a discriminatory motive.") (citing cases)).

Here, the Court finds that Plaintiff has not adduced evidence from which a reasonable jury could find that Defendants discriminated against her because of her membership in a statutorily protected class. Plaintiff asserts, generally, that other tenants had their cabinets replaced while she did not. (Am. Compl. at 7.) However, Plaintiff has not identified any other tenant who received repairs in a timelier fashion. In her Rule 56(d) Response, Plaintiff provides pictures of cabinets on the sidewalk outside her building, which she contends showed that "cabinet replacement work was going on in the building." (Pl.'s Rule 56(d) Resp. at 2.) But, as Defendants point out, the fact that other cabinets were placed on the sidewalk in front of Plaintiff's building does not establish that Defendants placed them there or why they were placed there. (Reply Mem. at 3.) Further, even if Plaintiff could establish that Defendants made repairs to other apartments, she would need to present evidence as to when those repairs were requested in order to show that non-Asian tenants were not subject to similar delays. Because

11

Plaintiff has not pointed to any evidence that Defendants were motivated by discrimination in delaying repairs to her apartment, the Court finds that Plaintiff has not established a *prima facie* case of discrimination based on delayed repairs. *See Rhodes v. Advance Prop. Mgmt., Inc.*, No. 10-CV-00826 (JCH), 2012 WL 12904797, at *7 (D. Conn. Aug. 30, 2012) ("Because [Plaintiff] has not adduced any evidence that suggests that racial animus was a significant factor in the Association's decision not to replace her washer, carpet, or drywall, the court grants summary judgment for the defendants with respect to her FHA claim."), *aff'd sub nom. Rhodes v. Churchill Bridge Ass'n Inc.*, 542 F. App'x 20 (2d Cir. 2013).

### B.    Plaintiff's Remaining Claims

Plaintiff's remaining claims largely pertain to what she believes was unfair treatment in response to the problems in her apartment. (Am. Compl. at 7-8.) Even if Plaintiff's complaint could be construed as asserting a hostile housing environment claim,[8] she has not presented evidence to suggest that Defendants actions were motivated by discrimination. Plaintiff alleges that Defendants believed other tenants of a different race and/or ethnicity instead of her, but Plaintiff's assertions are based on pure speculation that the other tenants were lying about having washing machines and that Defendants believed them because of their race. Plaintiff also alleges that Aziz and other men terrorized her[9] and that Aziz gaslighted her by blaming her for

---

[8] "A plaintiff asserting a hostile housing environment claim pursuant to Section 3604(b) must establish that (1) she was subjected to harassment that was sufficiently pervasive and severe so as to create a hostile housing environment, (2) the harassment was because of the plaintiff's membership in a protected class, and (3) the defendant(s) is responsible for the allegedly harassing conduct towards the plaintiff." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019).

[9] The Amended Complaint is not specific on this point. (Am. Compl. at 8.) In her opposition papers, Plaintiff refers to an incident where Aziz allegedly broke into her apartment claiming that he did so alongside a firefighter, though Plaintiff contends that Aziz lied about the firefighter being with him. (*See* Pl.'s Resp. to Defs.' 56.1 ¶ 22; Pl.'s Rule 56(d) Resp. at 3.)

12

water damage to the store below her apartment, but she does not cite to any evidence to suggest that these actions were because of her membership in a protected class.

Because, I find, based on the present record, that Plaintiff has not provided sufficient evidence in support of her FHA claim, I now consider Plaintiff's application pursuant to Rule 56(d).

## III. Plaintiff's Rule 56(d) Response

In opposing Defendants' motion for summary judgment, Plaintiff filed, among other opposition papers, a document titled "Plaintiff's Rule 56(d) Response to Defendants' Motion For Summary Judgment." (Pl.'s 56(d) Resp., ECF No. 92.) Plaintiff appears to seek additional discovery in response to the document requests and interrogatory responses that she previously served, particularly with respect to the replacement of cabinets in other apartments in her building and the cause of the water damage to her apartment. (*See id*.)

Both of these issues were the subject of a motion to compel filed by Plaintiff on May 22, 2020.[10] (*See* Endorsed Letter, ECF No. 58.) In response to Plaintiff's motion to compel, Defendants represented that they had produced all documents in their possession responsive to Plaintiff's discovery demands and supplemental discovery demands. (5/28/2020 Letter, ECF No. 59.) With respect to requests by other tenants for replacement of cabinets, Defendants represented that they had no records of any requests other than from Plaintiff. (*Id*. at 2.) In their initial discovery responses, Defendants also produced an invoice and bill of lading from Berkoff Fox for cabinets

---

[10] The issue of cabinet replacements also was the subject of Plaintiff's request for a third-party subpoena to Berkoff Fox, which the Court denied without prejudice. (*See* 6/15/20 Order, ECF No. 73; *see also* 9/30/20 Tr. at 14.) For the reasons set forth herein, the Court finds that additional discovery on this topic would not save Plaintiff's claim.

for another apartment.[11] (Reply Mem. at 2.) Plaintiff's speculation that Defendants have additional documents is insufficient to warrant relief under Rule 56(d). *See Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016) ("A party seeking to delay resolution of a summary judgment motion on grounds that he has been deprived of certain discovery materials must show that the material sought is germane to the defense, and that it is neither cumulative nor speculative, and a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient."); s*ee also In re Dana Corp.*, 574 F.3d 129, 148-49 (2d Cir. 2009) ("A court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on speculation as to what potentially could be discovered.").

Moreover, Plaintiff had the opportunity to depose Aziz and property manager Bridget Beatty regarding these topics. (*See* Aziz Tr., Pannone Decl. Ex. B, ECF No. 77-2; Beatty Tr., Pannone Decl. Ex. H, ECF No. 77-8.) Notably, Plaintiff was represented by limited-scope pro bono counsel for purposes of depositions. (Notice of Limited App., ECF No. 39.) During depositions, Plaintiff did not ask any questions about the Berkoff Fox documents produced during discovery. (S*ee generally* Aziz Tr., Beatty Tr.; *see also* Reply Mem. at 2.) Plaintiff also could have sought discovery from other tenants in her building, but either did not do so or did not uncover evidence to support her claims. Finally, Plaintiff has not shown how the additional discovery she seeks would create a genuine issue of fact with respect to discriminatory intent.

---

[11] As Plaintiff noted during the September 30, 2020 conference, it appears that these records were mistakenly included in Exhibit G to the Pannone Declaration with records of repairs made to Plaintiff's apartment. (*See* 9/30/20 Tr. at 7; Pannone Decl. Ex. G, ECF No. 77-7, at 6-7.) Nonetheless, instead of being an "unwitting disclosure" (*see* Pl.'s Resp. to Defs.' 56.1 ¶ 15) Defendants explained that they produced the documents in response to Plaintiff's discovery requests. (*See* 9/30/20 Tr. at 15; Reply Mem. at 2.)

For these reasons, the Court finds no basis to deny or defer Defendants' motion to allow Plaintiff to seek additional discovery regarding these issues. Plaintiff has not identified obtainable facts that are reasonably expected to raise a genuine issue of material fact. Accordingly, Plaintiff's application under Rule 56(d) is denied. *See Leckie*, 2020 WL 5238602, at *9 (denying application under Rule 56(d) because, *inter alia*, additional discovery would not raise genuine issue of material fact).

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully requested to mail a copy of this Opinion and Order to the *pro se* Plaintiff and to close this case.

**SO ORDERED.**

DATED:     New York, New York
           February 12, 2021

_____
STEWART D. AARON
United States Magistrate Judge